IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KAREN E. McGUFFEY ELLIOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-cv-0019 |
| ) | Judge Aleta A. Trauger |
| THEODORE W. GARRETT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The *pro se* plaintiff has now complied with the Order requiring her to file an Amended Complaint. (*See* Doc. No. 7.) Because the plaintiff proceeds *in forma pauperis*, the Amended Complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915(e)(2)(B). The court must dismiss the Amended Complaint if it fails to state a claim for which relief may be granted.

### I. Standard of Review

By law, the court must conduct an initial review of any civil complaint filed *in forma pauperis*. 28 U.S.C. § 1915(e)(2). Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. *Id.* The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [that statute] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Thus, in reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court must then consider whether those factual allegations, accepted as true, "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## II. Factual Allegations and Procedural Background

In the original Complaint, the plaintiff alleges that she was bequeathed inheritances in the 1970s, 1980s, 2000s and 2010s, but that defendant Theodore Garrett, who is a resident of Charlotte, North Carolina, has deprived her of her rights of inheritance. She asks the court to (1) enter an order directing the defendant to "provide all documents, legal tender, wills, testaments, list of gifts intended for [the plaintiff] since 1970 . . . to the present day; (2) order the defendant to "turn over the items of value" to the plaintiff; and (3) enter an order protecting the plaintiff, her mother, and her daughters from "retaliation of any kind." (Compl., Doc. No. 1, at 3.)

Upon the court's directive that she show cause why the action should not be dismissed for lack of jurisdiction, as the Complaint fails to allege facts showing that either diversity jurisdiction or federal question jurisdiction exists, the plaintiff has filed an Amended Complaint.

In the amended pleading, she alleges that the court has diversity jurisdiction because "[t]he amount in contradistinction exceeds $100 million." (Doc. No. 7, Am. Compl. at 1.) She does not explain how she reaches that figure other than to state that "General Foods Company falls within the scope of the Garrett family of Durham, North Carolina, the homeplace of [her] grandparents . . . and their first son, [the plaintiff's] uncle [and the defendant in this action], Theodore W. Garrett, who was initially named the co-executor of the Family Estate papers." (*Id.*)

The plaintiff alleges that she was repeatedly told by her grandparents that she and her siblings would receive an inheritance from the grandparents upon their death. Although the plaintiff's allegations are difficult to decipher, the court understands the plaintiff to be alleging that her uncle did not treat her fairly, largely because he disapproved of her parents and possibly because the plaintiff is female. She believes that, because her birth parents were unable to take care of her, her uncle should have done so, in order to honor her grandparents' request.[1] She states that she sues her uncle "to request that he honor his Father and Mother, because it was their wish." ( *Id.* ¶6.) She requests a judgment "ordering the defendant's disclosure of each will

---

[1] The plaintiff alleges, for instance, that "Defendant is overlooking the reason for his executorship as a swerve about my parentage and their misgivings throughout our childhood." (Doc. No. 7, Am. Compl. ¶ 3.) The Amended Complaint continues:

> In addition, Plaintiff believes she was equal in law, respectability, and in the hearts of her grandparents at birth and following. However, if and when there was a question about who would marry the females of the family, Plaintiff averred to the extent that Plaintiff concludes that somehow the Defendant must unequivocally provide the documents demanded for Plaintiff's review and emancipation. Plaintiff is not a child. Without equal respectability, Plaintiff has listened to the orders and directives of the men among the family and businesses without regard for whether she had received any of her inheritances. Inheritances, here, shall not include health matters, because Plaintiff believes that family primacy includes financial stewardship. In other words, if and when the Plaintiff's actual birth parents were unable to perform actions and conduct preferred by the grandparents, uncles, aunts, and Plaintiff, the Defendant ought to have compassionately done so, because they requested him to do so and in honor of his parents' request.

(*Id.* ¶ 4.)

and testament including her by mention and/or by name, family photos, an updated family tree," and precluding her family members from "depriving her two daughters of their U.S. selfdom." (Am. Compl. at 4.)

**III.    Discussion**

Federal courts are courts of limited jurisdiction, which means that, for a federal court to hear an action, it must have subject matter jurisdiction. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 782 (E.D. Ky. 2008). There are two ways this court can obtain jurisdiction over a case or controversy; first, the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute confers on the federal district courts what is known as "federal question jurisdiction." In this case, the plaintiff does not cite or refer to any federal law, treaty, or section of the Constitution. The court does not have federal question jurisdiction over this action.

The other type of original federal district court jurisdiction is diversity jurisdiction. Pursuant to 28 U.S.C. § 1332, diversity jurisdiction arises when the matter is between citizens of different states and the amount in controversy exceeds $75,000. To determine the value of the controversy, the court generally relies on the amount alleged in the complaint. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). The court "examine[s] the complaint at the time it was filed" to determine whether the amount-in-controversy requirement has been satisfied. *Id.* (citing *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976)). Generally, the court "should not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (quotation omitted).

The plaintiff here asserts that her uncle resides in North Carolina, while she resides in Tennessee. She now asserts in her Amended Complaint that the amount in controversy "exceeds $100 million." (Am. Compl. at 1.) Generally, the amount claimed by the plaintiff in the complaint rules, as long as it is claimed in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Dismissal is proper, however, if the amount alleged in the complaint was never recoverable in the first instance:

> But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable[2] for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.*; *see also Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009).

The court finds that the amount in controversy claimed in the Amended Complaint, more than $100 million, is either delusional or is not made in good faith. *See Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (noting that "a court may dismiss a claim as factually frivolous if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional" (internal quotation marks and citations omitted). In addition, the plaintiff makes no effort to draw a connection between that sum and the defendant's actions, or even between that sum and the value of her grandparents' estates.

Even if the court could find that the amount in controversy at least exceeds $75,000, however, and assumes, for purposes of this initial review, that subject matter jurisdiction exists,

---

[2] As the First Circuit has noted, this passage is confusing for several reasons, not least because of "the Supreme Court's use of the term 'colorable' where the term 'not colorable' seems more appropriate." *Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 4 n.1 (1st Cir. 2011). That court noted that, while the term "colorable" is now "most commonly used" in the legal context "to mean having apparent validity," *id.* (citing Bryan A. Garner, A Dictionary of Modern Legal Usage 124 (1st ed. 1987)), the term may also mean "feigned, fictions, counterfeit." *Id.* (citing Merriam–Webster Third New International Dictionary 449).

for this case to proceed, the Amended Complaint must also state facts asserting a *cognizable* wrong and accompany these factual pleadings with assertions of *cognizable* legal claims. It appears that the plaintiff might be attempting to state a fraud claim against her uncle, based on his having withheld an inheritance from her, but fraud claims must be pleaded with some degree of particularity. Fed. R. Civ. P. 9(b). The required degree of particularity is not met here. The plaintiff may also be attempting to assert a claim based on breach of fiduciary duty against her uncle, in his capacity as executor of the grandparents' estates, but, again, the plaintiff has not alleged actual facts that would support such a claim.

As best the court can discern, the plaintiff believes that her uncle should have abided by the expressed wishes of his parents in taking care of the plaintiff's financial needs, but he failed to do so. The allegations in the Amended Complaint do not affirmatively indicate that he had a legal or contractual obligation to do so. The plaintiff does not actually allege facts that, if true, would show that she has been wrongfully deprived of an inheritance or that the defendant committed fraud or breached a fiduciary duty. Rather, the plaintiff appears to want to go on a fishing expedition to determine whether, and to what extent, she may have been so deprived of her rights of inheritance over the course of the last fifty years.[3]

---

[3] Of course, under the so-called "probate exception" to diversity jurisdiction, a federal court may not exercise jurisdiction over a claim, even where all the normal jurisdictional requirements are met, if the court would be put in the position of probating a will or administering an estate. *Markham v. Allen*, 326 U.S. 490, 494 (1946); *Uzielli v. Frank*, 137 F. App'x 795, 798 (6th Cir. 2005). The probate exception is narrow, however: "[T]he federal courts are able to handle suits establishing the claims of claimants against a decedent's estate as long as the federal court does not interfere with the probate proceedings themselves or generally take jurisdiction over the probate itself or of the property in the custody of the state probate court." *Uzielli*, 137 F. App'x at 799 (citations omitted). The claims in this case probably do not fall within the probate exception, because the plaintiff sues her uncle as executor of her grandparents' estates, and because it appears from the allegations in the Complaint and Amended Complaint that the plaintiff's grandparents died many years ago. Thus, it is unlikely that there are ongoing probate proceedings.

**IV.    Conclusion**

The court discerns no legal basis for granting the relief requested. Finding both that the Amended Complaint fails to allege facts plausibly showing that the court has diversity jurisdiction over this matter and that it fails to allege facts that support a cognizable legal claim for which relief may be granted, this action will be dismissed without prejudice. An appropriate order is filed herewith.

ENTER this 9th day of May 2018.

_____
ALETA A. TRAUGER
United States District Judge